IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

GARY THOMPSON, )
)
         Plaintiff, )
)
v. )    Case No. CIV-11-407-JHP
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
         Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Gary Thompson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 14, 1963 and was 47 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a refrigeration technician in a poultry plant, carpenter, painter, and machinist.

Claimant alleges an inability to work beginning September 28, 2008 due to limitations resulting from depression, uncontrolled diabetes, gallbladder problems, and high blood pressure.

## Procedural History

On July 28, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 13, 2011, an administrative hearing was held by video before ALJ Michael Kirkpatrick with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding from McAlester, Oklahoma. On May 3, 2011, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on October 6, 2011. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He determined that Claimant's medically determinable impairments were not severe and, therefore, Claimant was not disabled.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) finding Claimant's impairments were not severe; and (2) engaging in a faulty credibility determination.

## Step Two Analysis

Claimant contends the ALJ should have found one or more of his impairments to be severe. On May 28, 2003, Dr. Richard Hastings examined Claimant for an IME. He diagnosed Claimant with bilateral carpal tunnel syndrome with diabetic retinopathy, decreased visual acuity, uncontrolled diabetes with frequent recurrent episodes of hypoglycemia with diabetic ketoacidosis with attendant major clinical depression. (Tr. 437).

On December 27, 2007, Claimant was attended by Dr. Catherine Womack. Dr. Womack recognized Claimant had been hospitalized two years prior to the appointment for two weeks due to diabetic ketoacidosis. She diagnosed Claimant with essential hypertension, Type I diabetes mellitus, and anxiety disorder of unknown etiology. (Tr. 289-90).

On February 14, 2008, Claimant again saw Dr. Womack. Claimant complained of fatigue, anxiety, depression with feelings of hopelessness/worthlessness, and apathy. (Tr. 285).

On July 17, 2008, Claimant reported to Dr. Womack that he had experienced an episode of hypoglycemia where he had syncopal

episode and fell and hit the table. His blood sugar was 11 at that time. His girlfriend reported that Claimant had been having frequent hypoglycemia. He did not eat regularly. Claimant also reported feeling fatigue, decreased concentrating ability, and anxiety as it relates to work as he was very stressed from his supervisor. He experienced emotional lability, depression with feelings of hopelessness/worthlessness, anhedonia, and apathy. (Tr. 282).

On July 23, 2008, Claimant was hospitalized because of his poor control of his diabetes. He had an episode of hypoglycemia and ketosis without acidosis on presentation. (Tr. 208-10).

On August 1, 2008, Claimant reported to Dr. Womack that he was still vomiting and felt tired and sluggish. She diagnosed Claimant with hypertension, type II diabetes mellitus, uncomplicated, uncontrolled, diabetic gastropathy, and depression. She encouraged Claimant to take medication for his depression. She noted Claimant was depressed about his health outlook and the chronic nature of his diabetes but did not seem to try to help himself. Dr. Womack commented Claimant was in a self-destructive cycle of drug use (marijuana and methamphetamine) and worry about his health problems. (Tr. 277).

On August 7, 2008, Claimant saw Dr. Womack for a follow-up

visit. He reported feeling better but still a little sluggish. (Tr. 272). She noted Claimant's mood was dysthymic, unhappy, dysphoric, depressed, irritable, affect was abnormal and flat, thought processes were unimpaired, and thought content revealed no impairment. She found his hypertension and diabetes under better control but Dr. Womack did not believe Claimant was mentally or physically able to return to work. He was to return for re-evaluation. (Tr. 274).

On August 19, 20080, Claimant reported to the emergency room with nausea and vomiting. He had diabetic ketoacidosis. (Tr. 199).

On August 22, 2008, Claimant was seen by Dr. Terri Lewelling complaining of irregular sugar values and vomiting. Dr. Lewelling assessed Claimant with benign essential hypertension, stable on medication, type II diabetes mellitus, insulin dependent, poor control, diabetic hypoglycemia, severe and life threatening, and adjustment disorder with anxiety. (Tr. 262). On August 29, 2008, Claimant was released to work without restrictions but with the notation that he could relapse.

Claimant continued to suffer from irregularity in his blood sugar and diabetic ketoacidosis in February, July, and August of 2009. He reported weakness and fatigue. (Tr. 327-37, 363, 366,

396).

On October 24, 2009, Claimant underwent a consultative physical examination by Dr. Ashley Gourd. Dr. Gourd concluded Claimant suffered from insulin dependent diabetes mellitus, noting his difficulty with labile blood glucose to the point he had been hospitalized multiple times even when voicing a good understanding of the other disease process and that Claimant was unable to continue his usual line of work because of his disease, hypertension, and depression. Dr. Gourd found Claimant appeared depressed but had not been able to achieve full relief from symptoms with any of the medications. Claimant noted difficulty with motivations and regularly depressed mood also limiting his ability to function normally. (Tr. 400).

On December 11, 2009, Dr. Denise LaGrand conducted a mental status/diagnostic examination of Claimant. Claimant reported depression, anxiety, bipolar disorder, suicidal ideation, memory loss, difficulty concentrating, anger management issues, and panic attacks manifested by shortness of breath, nausea, agitation, and intense fear. He stated he also had physical maladies including hypertension, diabetes, erectile dysfunction, and gall bladder problems. (Tr. 404). He reported smoking marijuana up to two times per day, smoking a pack of cigarettes per day, drinking ½ to

one pint of alcohol per day and consuming a twelve-pack of soda per day. (Tr. 405). Dr. LaGrand diagnosed Claimant with polysubstance abuse/dependence, in partial remission, Major Depressive Disorder, moderate, and Pain Disorder, due to general medical condition. She estimated his GAF at 45. (Tr. 408). Claimant appeared to have adequate memory, persistence, and pace. Dr. LaGrand only evaluated Claimant's mental state, noting that the combination of mental and physical symptoms "leads to greater impairment and makes his (sic) less likely to be successful in a job setting." She concluded Claimant's ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors and co-workers was estimated to be low average. His substance use "most likely" was also detrimental to his functioning. Claimant's judgment was estimated to be adequate. (Tr. 409).

On January 19, 2010, Dr. Diane Hyde completed a Psychiatric Review Technique form on Claimant. She found he suffered from depressive syndrome characterized by anhedonia, appetite disturbance, sleep disturbance, decreased energy, and thoughts of suicide. (Tr. 414). She noted only mild functional limitations. (Tr. 421).

Claimant first contends the ALJ should have considered his diabetes as a severe impairment. At step two, Claimant bears the

burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28.

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted

as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

This Court is most concerned with the continuing uncontrolled nature of Claimant's diabetes and recurrent kenoacidosis. This condition has required frequent hospitalization in the past which would affect Claimant's ability to engage in work related activities on a consistent basis. The question remains unanswered from this medical record and the ALJ's findings whether the condition can be controlled absent his polysubstance abuse sufficiently to permit him to engage in at least sedentary work. The ALJ's all-encompassing finding that Claimant can engage at all exertional levels fails to consider Claimant's absences from work and the time required to recover from his bouts with kenoacidosis. As noted by one physician, the condition is "severe and life threatening." On remand, the ALJ shall develop the record with regard to Claimant's ability to maintain a consistent schedule in light of his uncontrolled diabetes and re-evaluate whether this

establishes the condition as a severe impairment.

With regard to Claimant's mental impairment, this Court agrees with the ALJ's findings that the condition simply does not have an impact upon his ability to engage in work-related activities. No medical provider has found such limitations in testing or evaluating the condition. At best, the condition imposes a mild limitation in functional areas which does not establish it as a severe impairment. Claimant failed to meet his burden on this condition at step two.

## Credibility Assessment

The ALJ questioned Claimant's credibility based upon (1) alleged "conflicting statements" given by Claimant regarding his income and the ALJ's perceptions of the requirements for seeking unemployment benefits; (2) no evidence Claimant had been refused medical treatment despite his testimony of a lack of resources causing the same; (3) the ALJ's perception that one in Claimant's medical state would seek frequent medical treatment which the ALJ concludes Claimant failed to do; and (4) Claimant could afford alcohol and drugs but not medical treatment.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are

peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

This ALJ arrives at conclusions regarding Claimant's credibility based upon personal opinions, personal beliefs, and personal bias instead of affirmatively tying the findings on credibility to evidence of record. On remand, the ALJ shall re-evaluate his credibility findings.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of March, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE